IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

GUY CAMPAGNA,

               Plaintiff,

        v.

WASHINGTON TOWNSHIP PUBLIC
SCHOOLS,

            Defendant.

HONORABLE KAREN M. WILLIAMS

Civil Action
No. 1:22-cv-05350-KMW-EAP

**OPINION**

**David M. Koller, Esq.**
**Jordan D. Santo, Esq.**
KOLLER LAW, LLC
2043 Locust Street, Suite 1B
Philadelphia, PA 19103

*Counsel for Plaintiff Guy Campagna*

**Suzanne M. Marasco, Esq.**
HILL WALLACK LLP
21 Roszel Road
P.O. Box 5226
Princeton, New Jersey 08543

*Counsel for Defendant Washington Township
Board of Education*

**WILLIAMS, District Judge:**

## I.    INTRODUCTION

Plaintiff Guy Campagna ("Plaintiff") brings this action against his employer, the Washington Township Board of Education ("Defendant" or "District"), asserting claims for age discrimination under federal and state law. Presently before the Court is the District's Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56, which Plaintiff has opposed. For the reasons set forth below, the District's Motion is denied.

II.    **BACKGROUND**

Plaintiff has been employed by the District as a physical education teacher since 2006. (ECF Nos. 75-12, 75-13.[1]) By way of background, Plaintiff began his teaching career after graduating from college in 1997, first serving as a teaching assistant at Montclair State University, then moving into a full-time position as a PE teacher at a New Jersey elementary school in 1998. (*Id.*) He remained in that role until 2006, when he joined the Washington Township Public School District as the sole PE teacher at Bells Elementary School. (*Id.*) Plaintiff has held this position continuously since then. (*Id.*)

During his tenure with the District, Plaintiff has maintained a clean disciplinary record and received positive evaluations. This includes being recognized with the District's "Teacher of the Year" award for the 2017–2018 academic year, which Plaintiff has described as the "greatest honor" of his career. (ECF No. 75-12 at ¶¶ 3–9.) Plaintiff was nominated for this award by Donna Costa, Plaintiff's direct supervisor and the District's Director of Health and Physical Education, who described Plaintiff as a leader, role model, and "master at his craft." (*Id.*)

A.    **Plaintiff's Claims**

On September 3, 2020, the District announced an anticipated vacancy for a physical education teacher at Bunker Hill Middle School. (ECF No. 68-5 at 12.[2]) After twenty-two years as an elementary-school teacher, Plaintiff expressed interest in transferring to a middle-school position and applied. He was thereafter invited to participate in a first-round interview. (*Id.*)

Plaintiff participated in a remote first-round interview on September 25, 2020, which was conducted by the middle school's administrators—Principal Michael D'Ostilio and Assistant

---

[1] *See* Certification of Plaintiff Guy Campagna (ECF No. 75-12); Resume of Guy Campagna (ECF No. 75-13.)

[2] *See* Washington Township Public Schools Department of Human Resources – Notice of Vacancy for Health/Physical Education Teacher Position (Posting #21-0051) (ECF No. 68-5 at 12.)

Principal Gregory Muscelli. (*Id.*) During the interview, the administrators acknowledged Plaintiff's many years of experience as an elementary-school educator, with D'Ostilio acknowledging him as a District "veteran" at the outset. (ECF No. 68-5 at 34, 36.[3]) They asked Plaintiff about his background, teaching philosophy, and reasons for seeking a transfer after many years in the elementary-school setting. (*Id.* at 34–49.) The interview concluded with the administrators describing the next steps, noting that they would continue interviewing candidates, and thanking Plaintiff. (*Id.* at 49.)

Plaintiff was not selected for a second-round interview. However, the administrators continued interviewing other candidates for the position, including Kevin Hillard, a thirty-one-year-old PE teacher from the School District of Philadelphia. (ECF Nos. 75-8, 75-9.[4]) Assistant Principal Muscelli—who was the only administrator to interview Hillard—described his first-round interview as one of the best he had ever seen. (ECF No. 68-5 at 31, 51–52[5]) Ultimately, Hillard was awarded the position. (*Id.*)

On September 30, 2020, Principal D'Ostilio telephoned Plaintiff to inform him of the District's decision. He stated that although he regarded Plaintiff as a strong educator who could contribute meaningfully to the school, he elected to advance "novice teachers" to the second round. (*Id.* at 54.[6]) He explained that he preferred candidates he could "groom" and "train from scratch" —individuals he could shape to fit the school culture he was working to build. In response, Plaintiff stated that he did not understand how his experience rendered him unadaptable, emphasizing that he had always taken direction, aligned himself with team needs, and worked within whatever

---

[3] *See* Transcript of September 25, 2020 Interview (ECF No. 68-5 at 34–49.)

[4] *See* Online Application, Cover Letter, and Resume of Kevin Hillard (ECF Nos. 75-8, 75-9.)

[5] *See* Gregory Muscelli's Deposition Transcript (ECF No. 68-5 at 29–32); Written Assessment of Hillard's First-Round Interview (ECF No. 68-5 at 51–52.)

[6] *See* Transcript of September 30, 2025 Telephone Call (ECF No. 68-5 at 54–56.)

system was in place. (*Id.* at 54–55.) D'Ostilio clarified that he did not mean to suggest Plaintiff was incapable of adapting or performing the role, but only that he believed the selected candidate could fulfill certain aspects of it "in a better way." (*Id.* at 55–56.) He reassured Plaintiff, "I didn't doubt for a second you were a team player. I didn't doubt that at all." (Id. at 55.)

Plaintiff subsequently filed a Charge of Discrimination with both the U.S. Equal Employment Opportunity Commission ("EEOC") and the New Jersey Division on Civil Rights ("NJDCR"). After investigation, the EEOC issued a Determination on May 3, 2022, finding reasonable cause to believe that the District discriminated against Plaintiff on the basis of age. (ECF No. 75-10.) The parties subsequently attempted to resolve their dispute through informal conciliation, which was unsuccessful, prompting Plaintiff to file his Complaint in this action on August 31, 2022.

### B.     **The District's Defense**

The District continues to maintain that Plaintiff was not discriminated against on the basis of age. It offers several distinct reasons for Plaintiff not being advanced, which it organizes under the heading of a broader, straightforward explanation: "he did not interview well." Def.'s Mot. Br. at 24.

Principal D'Ostilio has testified that he viewed Plaintiff's interview performance as generally subpar. (ECF No. 68-5 at 24–25.[7]) He described how Plaintiff's interview responses were at times incomplete, long-winded, or nonresponsive, and recalled feeling that his responses actually came off to him as "narcissistic." (*Id.* at 25.) Most significantly, he described being left with the impression that Plaintiff "might be difficult to work with." (*Id.* at 24.) According to D'Ostilio, that impression aligned with unsolicited warnings he had received beforehand from

---

[7] *See* Michael D'Ostilio's Deposition Transcript (ECF No. 68-5 at 22–27.)

three District employees—including Plaintiff's direct supervisor, Director Costa—each of whom reportedly told him that Plaintiff could be "difficult to work" at times. (*Id.* at 23.) D'Ostilio explains that although he did not rely on those comments going into the interview, he believed that Plaintiff's answer to one particular question confirmed those concerns. (*Id.* at 23–24.)

During the interview, Assistant Principal Muscelli explained that the middle-school PE department has a strong history of collegiality and collaboration, then asked Plaintiff how he would work with that group and integrate into the school community. (*Id.* at 42.) Plaintiff responded that PE teachers often develop close relationships because they share similar experiences and challenges. (*Id.*) To illustrate, he described his particularly strong bond with two colleagues who joined the District the same year he did and recounted a past incident in which all three faced potential layoff under a reduction-in-force. (*Id.* at 42–43.) Plaintiff explained that he reviewed the applicable tenure and seniority rules, concluded that the planned reductions were being applied incorrectly, and the Board ultimately reversed course and retained their positions once this was brought to its attention. (*Id.* at 43.)

D'Ostilio has described how Plaintiff's response "rubbed [him] the wrong way" and struck him as "narcissistic." (*Id.* at 24.) He interpreted it to be expressing "satisfaction" in exploiting a "loophole" in the District's collective-bargaining agreement that had allowed him to "sustain his position," suggesting that these are the means by which Plaintiff "would get along with everybody." (*Id.*) This exchange, D'Ostilio explains, confirmed the prior warnings he had received, and made him realize that Plaintiff "would not be somebody [he] would be looking for [as] a PE teacher." (*Id.*) The District similarly reasons that Plaintiff's response is indicative of deficient interpersonal skills and an inability to work well with others—qualities it identifies as essential to the specific position Plaintiff sought.

Assistant Principal Muscelli has offered a more limited critique of Plaintiff's interview performance. While he thought that some of Plaintiff's responses were incomplete or tangential, he did not believe that Plaintiff's interview was bad. (*Id.* at 30.) He also did not draw the same conclusions as did Principal D'Ostilio regarding Plaintiff's personality or character. (*Id.*) When asked if he could recall anything about Plaintiff's interview that gave him a negative impression, Muscelli responded: "I don't think so. Like I said, I think it was a pretty good interview. You know, perhaps the one question about cooperation with others, but I've rarely ever seen a perfect interview." (*Id.*) He did, however, express his belief that the successful candidate's interview was exceptional and comparably better. (*Id.* at 31–32.)

In the instant Motion, the District argues it is entitled to summary judgment because the record indisputably shows that Plaintiff was not hired due to legitimate concerns over his interpersonal skills. Moreover, it insists that there is absolutely no evidence in the record to suggest that the administrators even knew, or had reason to know, that Plaintiff was nearly twenty years older than the successful candidate, eliminating any suggestion that age played a role in the decision not to hire him. Viewed this way, the District sees no real evidence connecting the adverse decision to age, and concludes that no reasonable jury could find discrimination.

## III.    LEGAL STANDARD

A court may grant summary judgment when the materials of record "show[ ] that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir. 1983). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also M.S.*

*by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) ("A fact is material if—taken as true—it would affect the outcome of the case under governing law."). Moreover, "[a] dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini*, 795 F.3d at 416 (quoting *Anderson*, 477 U.S. at 248).

"The moving party bears the burden of identifying specific portions of the record that establish the absence of a genuine issue of material fact." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If satisfied, the burden then "shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a *genuine issue for trial*." *Id.* (internal quotation marks omitted) (emphasis in original). To survive a motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *See Anderson*, 477 U.S. at 256–57. "A non-moving party may not 'rest upon mere allegations, general denials or . . . vague statements[.]'" *Trap Rock Indus., Inc. v. local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). In evaluating a summary judgment motion, the court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

## IV.   DISCUSSION

Based on the District's failure to hire him, Plaintiff has asserted two companion claims for age discrimination respectively pled under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and the New Jersey Law Against Discrimination ("NJLAD"), N.J. STAT. ANN. §§ 10:5–1 *et seq.* The District moves for summary judgment on both. Because the statutes underpinning these claims have been interpreted and applied coextensively, the Court

addresses both claims together in a single analysis. *See Kelly v. Moser, Patterson and Sheridan, LLP*, 348 F. App'x 746, 747 n.2 (3d Cir. 2009) (observing that an "NJLAD claim is governed by the same analysis as [a] federal ADEA claim"); *Viscik v. Fowler Equip. Co.*, 800 A.2d 826, 833 (2002).

The ADEA and the NJLAD both make it unlawful for employers to intentionally fail or refuse to hire an individual "because of" that individual's age. *See* 29 U.S.C. § 623(a)(1); N.J. STAT. ANN. § 10:5-12(a).[8] This statutory language makes clear that liability pivots on the employer's motive—that age was the "reason" for the employer's decision. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)); *see also Garnes v. Passaic Cnty.*, 100 A.3d 557, 563 (N.J. Super. Ct. App. Div. 2014). To prevail on an age-discrimination claim, a plaintiff must therefore show by a preponderance of the evidence that her age "actually played a role" in the employer's decisionmaking process and that it "had a determinative influence" on its decision not to hire her. *Bryan v. Gov't of Virgin Islands*, 916 F.3d 242, 246 (3d Cir. 2019) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)); *see also Gross*, 557 U.S. at 176 (holding that age must be the "but-for" cause of challenged action); *Garnes*, 100 A.3d at 563. Where, as here, the plaintiff relies on circumstantial evidence to prove discrimination, courts analyze claims of disparate treatment using the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009); *Zive v. Stanley Roberts, Inc.*, 867 A.2d 1133, 1141 (N.J. 2005).

---

[8] The ADEA provides, in relevant part, that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire . . . because of such individual's age." 29 U.S.C. § 623(a)(1). The NJLAD similarly makes it unlawful "[f]or an employer, because of the . . . age . . . of any individual . . . to refuse to hire . . . such individual." N.J. STAT. ANN. § 10:5-12(a).

"The *McDonnell Douglas* framework aims to 'bring the litigants and the court expeditiously and fairly to th[e] ultimate question' in a disparate-treatment case—namely, whether 'the defendant intentionally discriminated against the plaintiff.'" *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 308 (2025) (quoting *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)). At the outset of this familiar three-step framework, "the plaintiff must first establish a *prima facie* case of discrimination." *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015) (citing *Keller v. Orix Credit All., Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997)). If the plaintiff is successful, the burden then shifts to the employer to articulate some "legitimate, nondiscriminatory reason" for taking the challenged action. *Id.* (quoting *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 412 (3d Cir. 1999)). If the employer satisfies this second step, the burden then "shifts back once more to the plaintiff to show, by a preponderance of the evidence, that the employer's proffered legitimate, nondiscriminatory reason was pretextual." *Id.* (citing *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013)).

A.   ***Prima Facie* Case**

The first step of the *McDonnell Douglas* framework "merely serves to raise a rebuttable presumption of discrimination by eliminating the most common nondiscriminatory reasons" for the employer's action. *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 365 (3d Cir. 2008) (internal quotation marks omitted). Thus, the task of establishing a *prima facie* case of discrimination is "not onerous" and poses "a burden easily met." *Id.* (quoting *Burdine*, 450 U.S. at 253). A plaintiff may establish a *prima facie* case of discrimination "simply by presenting evidence 'that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination.'" *Ames*, 605 U.S. at 309 (quoting *Burdine*, 450 U.S. at 253). For age-discrimination claims based on an employer's alleged failure to hire or

promote, such an inference can be created by satisfying the following elements: (1) the plaintiff is at least forty years of age; (2) she applied for and was qualified for the job; (3) she was rejected despite her qualifications; and (4) the employer ultimately filled the position with someone sufficiently younger to allow an inference of age discrimination. *See Willis*, 808 F.3d at 644; *Dunleavy v. Mount Olive Twp.*, 183 F. App'x 157, 158 (3d Cir. 2006).[9] Here, only the second and fourth prongs are in dispute.

### 1. *Qualifications*

The Court first considers whether Plaintiff was "qualified" for the position. *See Willis*, 808 F.3d at 644. For purposes of the *prima facie* case, this prong is assessed using an "objective standard." *Sempier v. Johnson & Higgins*, 45 F.3d 724, 729 (3d Cir. 1995). To satisfy it, a plaintiff need only show that she possessed the "minimal objective qualifications" for the position, such as required education, experience, or certifications. *Fowler v. AT&T, Inc.*, 19 F.4th 292, 303 (3d Cir. 2021). This limitation to objective criteria is intentional: an employer's "subjective evaluations are more susceptible of abuse and are more likely to mask pretext," and they are therefore reserved for the later stages of the analysis. *Matczak v. Frankford Candy & Chocolate Co.*, 136 F.3d 933, 939 (3d Cir. 1997) (quoting *Weldon v. Kraft*, 896 F.2d 793, 798 (3d Cir. 1990)), *abrogated on other grounds by Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999).

Here, the District argues that Plaintiff was not qualified for the position based on his purportedly lackluster interview performance. *See* Def.'s Mot. Br. at 18–21. While the District does not dispute that Plaintiff had the requisite education or relevant job experience, it contends

---

[9] Technically, the first prong of the *prima facie* case under the NJLAD does not require that the plaintiff be at least forty years old. Unlike the ADEA, whose protections are "limited to individuals who are at least 40 years of age," 29 U.S.C. § 631(a), the NJLAD "reaches discrimination based on youth as well," *Wright v. L-3 Commc'ns Corp.*, 227 F. Supp. 2d 293, 298 (D.N.J. 2002). However, that distinction is not relevant here, as Plaintiff is older than forty.

that his interview revealed a deficiency in "interpersonal skills," which it characterizes as "fundamental" to the job. *Id.* at 18. The District misapprehends the relevant standard.

As an initial matter, a job candidate's interview performance is not a job "qualification" at all, much less an objective one. Courts in this Circuit consistently treat poor interview performance as a legitimate, nondiscriminatory reason for failing to hire or promote a candidate. *Thompson v. Bridgeton Bd. of Educ.*, 9 F. Supp. 3d 446, 455 (D.N.J. 2014), *aff'd*, 613 F. App'x 105 (3d Cir. 2015); *see also Jones v. Brennan*, No. 17-cv-1056, 2019 WL 1615120, at *7 (D.N.J. Apr. 16, 2019). But like any other nondiscriminatory justification proffered by an employer, it is to be considered at the later stages of the burden-shifting framework—not at the *prima facie* stage. *See Matczak*, 136 F.3d at 939. That Defendant simultaneously invokes Plaintiff's interview performance as its step-two justification confirms that its introduction here is premature and legally misplaced.

The District's attempt to recast its dissatisfaction into a question of "interpersonal skills" does not change the analysis. Even assuming that Plaintiff's interpersonal skills could be divorced conceptually from his interview performance, it remains a subjective judgment being injected into a stage of the analysis where it does not belong. Again, the relevant inquiry is a purely objective one—whether Plaintiff had the "minimal objective qualifications" for the position. *Fowler*, 19 F.4th at 303. Considerations as to whether he possessed certain "subjective qualities"—such as leadership ability or interpersonal skills—are explicitly excluded from this inquiry, as they would render the entire burden-shifting framework meaningless. *Sempier*, 45 F.3d at 729 (3d Cir. 1995); *see also Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 321 (3d Cir. 2000) (stating that interpersonal skills cannot be evaluated objectively and therefore should not be relied upon by an employer to overcome a *prima facie* case of discrimination).

11

Here, the record plainly shows, and the District does not dispute, that Plaintiff "had the objective experience and education necessary to qualify as a viable candidate" for the position. *Sempier*, 45 F.3d at 729. Accordingly, Plaintiff has met the qualification element of his *prima facie* case.

### 2. *Age Disparity*

Turning to the final prong of the *prima facie* test, the Court must determine whether Plaintiff was passed over in favor of someone "sufficiently younger" to permit an inference of discrimination. *Willis*, 808 F.3d at 644. This element is satisfied where there is a "sufficient age difference" between the plaintiff and the successful candidate "such that a fact-finder can reasonably conclude that the employment decision was made on the basis of age." *Sempier*, 45 F.3d at 729; *see also O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996). Although "no particular age difference" is necessary, the Third Circuit has observed that a "five year difference can be sufficient," whereas a "one year difference cannot." *Showalter v. Univ. of Pittsburgh Med. Ctr.*, 190 F.3d 231, 236 (3d Cir. 1999) (quoting *Sempier*, 45 F.3d at 729).

Here, it is undisputed that Plaintiff was fifty years old at the time of his interview, and that the successful candidate, Hillard, was thirty-one. While the law imposes no minimum age gap, one of this significance falls comfortably within the range of differences courts have found sufficient to support an inference of discrimination. *See, e.g.*, *Sams v. Pinnacle Treatment Centers, Inc.*, No. 1:18-CV-09610, 2021 WL 2010570, at *4 (D.N.J. May 20, 2021) (holding nineteen-year age gap sufficient to raise inference of discrimination); *Kenny v. Univ. of Delaware*, No. 1:17-CV-01156-RGA, 2019 WL 5865595, at *4 (D. Del. Nov. 8, 2019) (holding that "substantial" seventeen-year age gap was sufficient), *aff'd*, 816 F. App'x 743 (3d Cir. 2020); *Sempier*, 45 F.3d at 730 (holding ten-year age gap sufficient to support inference of discrimination); *Bals v. Trump Nat'l Golf Club*

*Colts Neck LLC*, No. 14-cv-6055, 2016 WL 7325475, at \*8 (D.N.J. Dec. 16, 2016) (recognizing

that inference generally requires "at least a five year age difference").

The District nevertheless argues that this disparity is insufficient because the administrators

were allegedly not "aware" of any age difference at all, let alone the nineteen-year gap that existed

in fact. *See* Def.'s Mot. Br. at 12, 21–23. According to the District, neither Mr. D'Ostilio nor Mr.

Muscelli knew either candidate's exact age, and that Mr. Muscelli—then thirty-eight—thought

Plaintiff appeared "a whole lot younger" than himself. *Id.* at 23. The District further emphasizes

that the candidates' application materials did not reference their ages or birthdates, and asserts that

the interviewers therefore had no reason whatsoever to suspect an age difference. *See id.* at 11–12,

22–23. On this basis, the District contends that Plaintiff's claims fail because he adduces no

evidence showing that the interviewers accurately perceived this specific age disparity, or at least

one large enough to support an inference of discrimination. *See id.* at 21–23. Here too, the District

misapprehends applicable law.

Although not squarely addressed or developed by the District's argument, the Court

acknowledges that an employer's "knowledge" or "awareness" of a plaintiff's protected trait,

including age, has occasionally been addressed by courts in other disparate-treatment cases. *See,

e.g.*, *Gagliardi v. Compass One Healthcare*, No. 21-CV-20338, 2024 WL 3355302, at \*6 (D.N.J.

July 10, 2024); *Floyd v. Merck & Co., Civ. No. 18-3912, 2020 WL 1640083*, at \*4 (E.D. Pa. Apr.

2, 2020). Such awareness is not a formal, freestanding element of the *prima facie* test, but has

rather been treated as a factual circumstance implicit in the logic of conscious bias. After all, an

employer cannot intentionally discriminate "on the basis of a condition of which it was wholly

ignorant." *Geraci v. Moody–Tottrup Int'l, Inc.*, 82 F.3d 578, 581 (3d Cir. 1996); *see also Wishkin

v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007) (reiterating that *prima facie* test is flexible and context-

dependent). In practice, however, an employer's awareness of an employee's age is rarely at issue. Common experience teaches that a person's exact age or date of birth is rarely reflected in a job application, but that people "often look at someone's appearance or experience and infer that person's rough age" nevertheless. *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 267 (3d Cir. 2021). The rarity of the issue is even more pronounced in cases like this one, where the plaintiff is an internal job candidate. In the majority of such cases, an "employer's knowledge of a plaintiff's age will be undisputed because employers routinely maintain employee age information in their personnel files or are generally aware of employees' relative ages from personal on-the-job contact." *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 80 (2d Cir. 2005); *see also* Geraci, 82 F.3d at 581 ("[I]n the vast majority of discrimination cases, the plaintiff's membership is either patent (race or gender), or is documented on the employee's personnel record (age).").

However, even where an employer or its decisionmakers asserts total ignorance of age, the corresponding adjustment to the plaintiff's *prima facie* burden is modest and easily met. Contrary to the District's suggestion, satisfying that burden does not require "actual knowledge or direct evidence of the [plaintiff's] age" at all, much less of an age disparity specifically perceived. *Porter v. Merakey USA*, No. 22-2986, 2024 WL 3581169, at *2 (3d Cir. July 30, 2024) (citing *Martinez*, 986 F.3d at 267); *see also Woodman*, 411 F.3d at 83 (acknowledging that employer's knowledge of relative age "need not be demonstrated, at any stage of the proceedings, by direct proof"). Rather, a plaintiff need only point to some evidence from which a decisionmaker could have directly or indirectly inferred her age—such as physical appearance, resume dates, or amount of prior work experience. *See Porter v. Merakey USA*, No. 22-2986, 2024 WL 3581169, at *2 n. 11 (3d Cir. July 30, 2024); *Gagliardi*, 2024 WL 3355302, at *6; *Floyd*, 2020 WL 1640083, at *4. Courts have found this burden unmet only in unusual circumstances, such as where the evidentiary

14

record was exceptionally thin or where the plaintiff outright failed to respond at all to the employer's professed lack of awareness. *See, e.g.*, *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 799 (3d Cir. 2003); *Harris v. Dow Chem. Co.*, 586 F. App'x 843, 846 (3d Cir. 2014).

Applying these principles here, the Court finds that the administrators' claimed ignorance does not foreclose Plaintiff's *prima facie* case. Even accepting the District's premise that Plaintiff must demonstrate the interviewers' subjective perception of a meaningful age disparity, a nineteen-year age gap readily supports that inference on its own. Drawing reasonable inferences in Plaintiff's favor requires acknowledging the reality that a substantial age difference like this one is ordinarily apparent. Even in the more familiar rhythms of daily life, a remark that someone looks nearly two-decades younger than his actual age is often understood as an extravagant or facetious compliment, rather than a literal assessment. Against this backdrop, the administrator's uncorroborated claims of being unable to discern any remarkable age difference do nothing more than trigger a credibility issue at the threshold, foreclosing summary judgment. *See Bensel v. Allied Pilots Ass'n*, 675 F. Supp. 2d 493, 500 (D.N.J. 2009) (observing that "issues of intent, good faith and other subjective feelings" are "notoriously inappropriate" for resolution at summary judgment); *accord Metzger v. Osbeck*, 841 F.2d 518, 521 (3d Cir. 1988) (explaining that testimony from witnesses "as to their own states of mind" often turns on credibility and is "best left to the fact finder").

But even assuming that Plaintiff appeared unusually young or comparable in age to the successful candidate, the record still provides numerous grounds on which a reasonable jury could discredit the administrators' claims. The candidates' application materials, for example, contain precisely the kinds of chronological data from which people ordinarily infer age. Plaintiff's resume shows that he began his teaching career the same year he graduated from college in 1997, likely

15

placing him in his early twenties at that time and, by simple arithmetic, in his late forties or older at the time of the interview. By contrast, the successful candidate's materials indicate that he completed student teaching in 2011, graduated that same year, and began full-time teaching in 2012—suggesting that he was likely in his early twenties when he began teaching and therefore roughly thirty when interviewed. It does not take mathematical precision to appreciate that these parallel timelines point to a sizable age gap. And the record leaves little doubt that the administrators not only consciously appreciated these experience markers, but that Principal D'Ostilio explicitly relied on them in deciding to advance only "novice" teachers with less experience than Plaintiff. *See Porter*, 2024 WL 3581169, at \*3 (holding summary judgment inappropriate where employer "could have inferred [the plaintiff's] age from both his appearance and the year of his college graduation").

In conclusion, the Court finds that Plaintiff has adduced sufficient evidence to satisfy the fourth prong of his burden, complete his *prima facie* case, and raise an inference of discrimination. The District has not shown entitlement to judgment as a matter of law, and its Motion for Summary Judgment is accordingly denied.

### B.    <u>Legitimate, Nondiscriminatory Reason</u>

As Plaintiff has successfully established a *prima facie* case of discrimination, the burden now shifts to the District to "articulate a legitimate nondiscriminatory reason" for not hiring him. *Willis*, 808 F.3d at 644 (quoting *Jones*, 198 F.3d at 412). This does not require the District to "prove that the articulated legitimate, nondiscriminatory reason was the actual reason for the adverse employment action." *Id.* Its burden here is rather one of production, and it requires the District to simply "provide evidence that will allow the factfinder to determine that the decision was made for nondiscriminatory reasons." *Id.*

As noted above, the District generally cites to Plaintiff's interview performance as the reason for why Plaintiff was not advanced, but also cites to other concerns regarding Plaintiff's interpersonal skills and ability to collaborate with peers. Plaintiff does not dispute that the District's reasons are sufficient for purposes of step two, and so the Court proceeds to the last stage of the analysis.

### C.    Evidence of Pretext

Finally, the Court must determine whether Plaintiff has adduced sufficient evidence from which a jury could conclude that the District's proffered reason for its decision was pretext. *See Willis*, 808 F.3d at 644. There are two avenues for demonstrating pretext. First, a plaintiff can "point to evidence that would allow a factfinder to disbelieve the employer's reason for the adverse employment action." *Id.* (citing *Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994)). Alternatively, a plaintiff can "point to evidence that would allow a factfinder to believe that an invidious discriminatory reason was 'more likely than not a motivating or determinative cause' of the employer's action." *Id.* at 645 (quoting *Fuentes*, 32 F.3d at 764).

Here, the Court finds that Plaintiff has adduced sufficient evidence to prove pretext through the first avenue. In order to cast the District's reasons in sufficient disbelief, Plaintiff must point to evidence indicating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence," and "hence infer that the employer did not act [for the asserted] non-discriminatory reasons." *Fuentes*, 32 F.3d at 765 (internal quotation marks omitted) (emphasis and alteration in original). The record here reflects such indications.

17

First, a reasonable jury could find pretext in the shifting and inconsistent explanations for why Plaintiff was not advanced. When notifying Plaintiff of the decision, Principal D'Ostilio did not cite concerns about teamwork, collaboration, or interpersonal skills. To the contrary, he expressly told Plaintiff that he had "not doubted for a second" that Plaintiff was a team player and did not question his ability to work well with colleagues. Instead, he explained that he preferred more adaptable "novice" teachers, in contrast to more experienced educators like Plaintiff. Now, both D'Ostilio and the District assert that Plaintiff was passed over because the interview revealed serious concerns about his interpersonal skills and ability to collaborate—an explanation that is squarely at odds with what D'Ostilio told Plaintiff contemporaneously with the decision. The inconsistency is especially notable given that the candidate who fit the "novice" teacher profile was nearly twenty years younger than Plaintiff. *See also Jackson v. Trump Ent. Resorts, Inc.*, 149 F. Supp. 3d 502, 512 (D.N.J. 2015) (observing that comments about a plaintiff's "inability to adapt" can be "related to age and therefore impermissible discrimination"). A reasonable jury could view this shift in rationale, coupled with the significant age gap, as evidence that the District's present explanation is not the true one. *See Fuentes*, 32 F.3d at 765.

The District acknowledges the conflicting rationales, but explains that D'Ostilio did not tell Plaintiff the truth because "he did not want to be rude." Def.'s Mot. Br. at 11. Perhaps so. But the District misses the point—"any disparity between the real reason and stated reason" for the decision calls for "credibility determinations this Court can not make on a motion for summary judgment." *Buchholz v. Victor Printing, Inc.*, 877 F. Supp. 2d 180, 191 n.10 (D.N.J. 2012).

Contributing to those credibility issues is the administrators' professed age blindness, a claim that could also give a reasonable jury pause. The District has argued that the administrators could not have discriminated on the basis of age because they allegedly did not know that Plaintiff

18

was nearly two decades older than the successful candidate. In pressing that point, it emphatically insists that there is "nothing in the record" showing that the administrators "knew or had reason to believe" otherwise. Def.'s Mot. Br. at 12. But both assertions sit uneasily beside the undisputed evidence showing that the administrators repeatedly acknowledged and appreciated Plaintiff's extensive experience. Indeed, D'Ostilio explicitly relied on it, contrasting Plaintiff's long tenure with the substantially lesser experience of more "novice" teachers like Hillard, who was advanced for precisely that reason. The tension created by their claimed ignorance is further amplified by the unsubstantiated implication that the administrators subjectively perceived Plaintiff as significantly younger than his actual age. On this record, a reasonable jury could construe the administrators' alleged ignorance as a conscious effort to avoid acknowledging an age difference that was otherwise obvious and, in turn, reject the District's broader contention that age played no role in the decision. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 134 (2000) ("In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.").

Lastly, a jury could reject the District's critique of Plaintiff's interpersonal or collaboration skills based on the contradictory judgments of its own witnesses. The District's position hinges almost entirely on Principal D'Ostilio's portrayal of Plaintiff as "difficult to work with" and deficient inability to work with others. Yet that assessment is contradicted by the District's other witnesses. Director Costa—one of the very individuals D'Ostilio claims warned him about Plaintiff—could not recall ever making such a statement. (ECF No. 75-6 at 5.[10]) She further testified that she did not know Plaintiff to be "difficult to work with" and observed his collaborations with colleagues to be "very amicable" and "very productive." (*Id.* at 6.) Assistant

---

[10] *See* Deposition Transcript of Donna Costa (ECF No. 75-6.)

Principal Muscelli, for his part, believed that the successful candidate interviewed better, but did not share any of the negative impressions that led D'Ostilio to deem Plaintiff unsuited for the job or otherwise difficult to work with. (ECF No. 68-5 at 30.) A jury could therefore view the District's decision to embrace D'Ostilio's more negative, outlier assessment—particularly as to subjective qualities like interpersonal skills—as selective, incoherent, and unworthy of credence. *See Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (observing that subjective interview criteria, such as "attitude" or "teamwork," may mask pretext).

Based on the foregoing evidence, a jury could reasonably find the District's explanations unworthy of credence, and could likewise infer that they are offered to mask improper motive. The Court therefore concludes that Plaintiff has presented sufficient evidence of age discrimination to submit his case to a jury.

## V.    CONCLUSION

For all of the reasons set forth above, the District's Motion for Summary Judgment is denied.

Date:    November 25, 2025

KAREN M. WILLIAMS
U.S. DISTRICT COURT JUDGE

20